UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

**MELVIN L. VINSON, JR.,**

      **Plaintiff,**     CASE NO:  09-721

vs.

**NIKE, INC.,**

      **Defendant.**

_____ /

**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION,
AND RELATED CLAIMS**

Plaintiff, MELVIN L. VINSON, JR., brings this action against Defendant, NIKE, INC., and for his Complaint alleges as follows:

**Nature of the Action**

1. Plaintiff seeks monetary and injunctive relief for Defendant's acts of trademark infringement, false designation of origin, unfair competition, and related claims associated with Defendant's infringement of Plaintiff's trademarks. Plaintiff's claims are based on the theory of reverse trademark confusion.

**Parties**

2. Plaintiff Melvin L. Vinson, Jr. ("Vinson") is an individual residing in Eau Claire, Wisconsin and doing business in the State of Wisconsin and in this judicial district.

3. Defendant Nike, Inc. ("Nike") is an Oregon corporation with its principal place of business at One Bowerman Drive, Beaverton, Oregon 97005. Nike does business in this judicial district.

**Jurisdiction and Venue**

4. This Court has original jurisdiction over this case pursuant to 28 U.S.C. §1331 because it arises under 15 U.S.C. §1051, *et seq.*

5. This Court also has diversity jurisdiction under 28 U.S.C. §1332 because Vinson and Nike are citizens of different states and the amount in controversy exceeds $75,000.00.

6. This Court has supplemental jurisdiction over Counts IV and V pursuant to 28 U.S.C. §1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the majority of events leading to this lawsuit occurred in this district.

**Facts**

8. Vinson is 35 years old. His nickname his entire life has been "Melo." His family members, friends, and business associates refer to him as "Melo."

9. In the late 1990's, Vinson conceived the idea to start an urban clothing line. Vinson called his clothing line "Melo Gear." Prior to June 2003, he began selling T-shirts and hats bearing the trademark MELO out of the trunk of his car and on the sidewalks in Eau Claire, Wisconsin and Minneapolis, Minnesota. To help develop his business, Vinson attended several meetings and workshops for small business owners. He spent his entire life's savings developing and promoting the "Melo Gear" product line.

10. Prior to June 2003 and continuing through the present, Vinson has used the trademark MELO to promote, advertise, and sell products bearing the MELO trademark.

11. Vinson is the rightful owner of U.S. Trademark Registration No. 3236278 in the word mark MELO for use on shirts, pants, hats, and an assortment of other apparel. Attached as Exhibit A is a true and correct copy of the Registration Certificate for the MELO trademark.

12. Prior to June 2003, and continuing through the present, Vinson has been using the MELO GEAR and DESIGN trademark consisting of the words "MELO GEAR" below a cartoon cat that carries a cane and wears a flashy suit and hat. The MELO GEAR and DESIGN mark is depicted in Exhibit B.

13. Vinson is the rightful owner of U.S. Trademark Registration No. 3086307 in the MELO GEAR and DESIGN trademark for use on shirts, pants, head gear, and an assortment of other clothing apparel. Attached as Exhibit B is a true and correct copy of the Registration Certificate for the MELO GEAR and DESIGN trademark.

14. On November 16, 2005, through the Wisconsin Secretary of State, Vinson applied for and obtained a Wisconsin trademark registration for the trademark MELO. Attached as Exhibit C is a true and correct copy of the November 16, 2005 Application for Registration of Marks.

15. Vinson also owns common law trademark rights in the "MELO signature mark" which features Vinson's own signature of the word "Melo" in cursive handwriting. Vinson began using the "MELO signature mark" prior to June 2003.

16. Vinson has used and continues to use the MELO registered trademark, the MELO GEAR and DESIGN registered trademark, and the MELO signature mark in conjunction with the promotion of his "Melo Gear" clothing line.

17. Beginning in 2003, Vinson offered for sale on the Internet apparel in his "Melo Gear" product line. Through his Internet presence, Vinson has sold products to individuals across the United States, and as far away as Africa.

18. Carmelo Anthony is an NBA basketball player who plays for the Denver Nuggets. On information and belief, Anthony uses the nickname "Melo."

19. On information and belief, Anthony signed an endorsement deal with Nike in mid-2003. As a result of this endorsement deal, since 2003 Nike has been using various iterations of the infringing mark "MELO" on a clothing line.

20. Nike's advertisement, promotion, and sale of goods featuring the infringing MELO marks constitutes trademark infringement of Vinson's registered trademarks.

21. Vinson first learned of Nike's infringing use of the MELO marks in 2003. Since then, Vinson has sent Nike at least two cease and desist letters demanding that Nike stop its infringing conduct. Attached as Group Exhibit D are the cease and desist letters.

22. Despite its receipt of these cease and desist letters, Nike continues to this day to infringe Vinson's trademarks by promoting and selling products bearing the infringing MELO trademarks.

23. Not only has Nike continued to use its infringing MELO trademarks after receiving the cease and desist letters, but, on July 18, 2008, Nike applied to register two trademarks featuring the term "Melo" for use on clothing and apparel. Nike filed Trademark Application Serial Nos. 77526153 and 77526157. Attached as Group Exhibit E are documents obtained from the Trademark Electronic Search System related to Serial Nos. 77526153 and 77526157.

24. On May 4, 2009, the US Patent and Trademark Office issued Final Office Actions in which it refused to register both of Nike's "Melo" trademarks depicted in Serial Nos. 77526153 and 77526157. The US Patent and Trademark Office went through a detailed likelihood of confusion analysis and concluded that there was in fact a likelihood of confusion between Nike's applied-for marks and Vinson's two registered trademarks. Attached as Exhibit

F is a true and correct copy of the US Patent and Trademark Office's Final Action related to Application No. 77526157.

25.     On June 26, 2009, Nike continued its bullying tactics by filing with the Trademark Trial and Appeal Board a Petition to Cancel Vinson's trademark registrations. On September 3, 2009, Nike withdrew its Petition to Cancel.

26.     Nike's use of the infringing MELO trademarks has caused and is likely to continue to cause confusion amongst consumers.

27.     The infringing MELO trademarks used by Nike are substantially similar to Vinson's registered trademarks and his common law MELO signature mark.

28.     The goods on which Nike has used the infringing MELO trademarks are substantially similar to the goods on which Vinson has used his registered trademarks and his common law MELO signature mark.

29.     Nike's infringing MELO goods are offered for sale in the same or substantially similar trade channels as the goods on which Vinson uses his registered trademarks and his common law MELO signature mark.

30.     Vinson is the senior user of the MELO trademarks. Nike's subsequent use of the infringing MELO marks has caused and will continue to cause reverse confusion amongst consumers. Nike has saturated the marketplace and has led consumers into believing that Vinson's registered trademarks are actually owned by Nike or that Vinson is the infringer.

31.     Since Nike began using its infringing MELO trademarks, Vinson has attempted to sell the clothing in his "Melo Gear" product line in numerous retail stores however he has been denied access because these retail stores already carried Nike's infringing MELO products.

### Count I – Infringement of Federally Registered Trademark (MELO)
### And False Designation of Origin

32. Vinson repeats and realleges each and every allegation in paragraphs 1-31 as though fully set forth herein.

33. As a result of Nike's use of the infringing MELO marks, Nike has caused and is likely to continue to cause confusion or to cause mistake or to deceive the public.

34. Nike's use of the infringing MELO marks has misled and is likely to continue to mislead prospective consumers as to the affiliation, connection, or association of Nike's goods with those offered by Vinson, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. §§1114 and 1125.

35. Nike's acts as alleged have been committed with full knowledge of Vinson's longstanding and prior rights in the MELO federally registered trademark. As a result, Nike's infringement is intentional and willful.

36. By reason of Nike's acts, Vinson has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill and has and will continue to sustain substantial loss of revenues and profits.

37. Unless enjoined by this Court, Nike will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Vinson. Vinson has no adequate remedy at law for Nike's acts.

### Count II – Infringement of Federally Registered Trademark (Melo Gear and Design)
### And False Designation of Origin

38. Vinson repeats and realleges each and every allegation in paragraphs 1-37 as though fully set forth herein.

39. As a result of Nike's use of the infringing MELO marks, Nike has caused and is likely to continue to cause confusion or to cause mistake or to deceive the public.

40. Nike's use of the infringing MELO marks has misled and is likely to continue to mislead prospective consumers as to the affiliation, connection, or association of Nike's goods with those offered by Vinson, causing consumers to rely thereon, in violation of the Lanham Act, 15 U.S.C. §§1114 and 1125.

41. Nike's acts as alleged have been committed with full knowledge of Vinson's longstanding and prior rights in the MELO GEAR and DESIGN registered trademark. As a result, Nike's infringement is intentional and willful.

42. By reason of Nike's acts, Vinson has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill and has and will continue to sustain substantial loss of revenues and profits.

43. Unless enjoined by this Court, Nike will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Vinson. Vinson has no adequate remedy at law for Nike's acts.

### Count III – Unfair Competition

44. Vinson repeats and realleges each and every allegation in paragraphs 1-43 as though fully set forth herein.

45. Vinson has established common law trademark rights in his MELO, MELO GEAR and DESIGN, and MELO signature trademarks as applied to the goods on which these trademarks have been used.

46. Nike's infringing use of the MELO trademarks has misled and is likely to continue to mislead prospective consumers as to the affiliation, connection, or association of

Nike or its products with that of Vinson and his products, and is likely to cause confusion, mistake, or to deceive consumers as to the affiliation, connection, or association of Nike with Vinson.

47. By reason of Nike's acts, Vinson has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill and has and will continue to sustain substantial loss of revenues and profits.

48. Unless enjoined by this Court, Nike will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm to Vinson. Vinson has no adequate remedy at law for Nike's wrongful acts.

### Count IV – Trademark Infringement under Wisconsin Law

49. Vinson repeats and realleges each and every allegation in paragraphs 1-48 as though fully set forth herein.

50. Vinson has established common law rights in the MELO, MELO GEAR and DESIGN, and MELO signature marks as applied to clothing apparel such as shirts, hats, pants, hoodies, and jackets.

51. Vinson is also the rightful owner of a Wisconsin registered trademark in the term "MELO."

52. Nike has used the infringing MELO trademarks that are identical or substantially similar to Plaintiff's trademarks.

53. Nike's use of these infringing MELO trademarks is likely to cause confusion amongst consumers in violation of Wisconsin common law.

54. By reason of Nike's acts, Vinson has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill and has and will continue to sustain substantial loss of revenues and profits.

### Count V – Violation of Wisconsin Deceptive Trade Practices Act

55. Vinson repeats and realleges each and every allegation in paragraphs 1-54 as though fully set forth herein.

56. Nike's use of its infringing MELO marks in commerce constitutes an unfair or deceptive trade practice in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. §100.18, *et seq.*

57. Nike has knowingly and willfully violated Wisconsin's Deceptive Trade Practices Act, Wis. Stat. Ann. §100.18, *et seq.*

58. Nike's conduct has misled and will continue to mislead consumers.

59. Nike has misappropriated Plaintiff's distinctive MELO, MELO GEAR and DESIGN, and MELO signature marks and the goodwill and business reputation built by Vinson.

60. Vinson has no adequate remedy at law for Nike's wrongful acts. Unless enjoined by this Court, Nike will continue to perform the wrongful acts complained of herein and continue to cause damages and injury, all to the immediate and irreparable harm of Vinson.

WHEREFORE, Plaintiff, Melvin L. Vinson, Jr., prays for the following relief:

a. A permanent injunction enjoining and restraining Nike, its officers, agents, employees, representatives, and all others acting in concert or participation with any of them from:

   i) Using in commerce any trademarks that are substantially similar to Vinson's registered MELO and MELO GEAR and DESIGN trademarks as depicted in USPTO Registration Nos. 3236278 and 3086307, as well as Vinson's Wisconsin registered trademark in MELO and Vinson's MELO signature mark;

    ii) Using in commerce the trademarks depicted in USPTO Trademark Application Nos. 77526153 and 77526157; and

    iii) Doing any other act that is likely to induce the belief amongst consumers that Nike's products are in any way sponsored or approved by Vinson or that Vinson is the infringer of Nike's products;

b. That Nike be required to pay Vinson his actual damages as a result of Nike's conduct complained of herein;

c. That Nike be required to pay to Vinson all profits realized by Nike as a result of its infringement of Vinson's trademarks and Nike's false designation of origin and that these elicit profits be trebled because they were generated willfully by Nike, pursuant to 15 U.S.C. §1117(b);

d. That Nike be required to pay Vinson his costs and reasonable attorneys' fees in accordance with 15 U.S.C. §1117;

e. That Vinson be awarded such further relief as this Court deems just and equitable.

### Jury Trial Demand

Plaintiff demands a trial by jury.

Filed: November 30, 2009

                            MELVIN L. VINSON, JR.

                            By: s/James K. Borcia
                                 One of his attorneys

| | |
|---|---|
| Michael J. Duffy, Esq. | Pete V. Albanis, Esq. |
| James K. Borcia, Esq. | Morgan & Morgan, P.A. |
| Michael Conlon, Esq. | 12800 University Dr. Suite 600 |
| Tressler LLP | Fort Myers, Florida 33907 |
| 233 S. Wacker Dr. Suite 2200 | 239-433-6880 – tele |
| Chicago, Illinois 60606 | 239-433-6836 – fax |
| 312-627-4000 – tele | |
| 312-627-1717 – f ax | |